**Rodney L. FELDER, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

**No. 24845.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 25, 2002.

Kent Denzel, Assistant State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Richard A. Starnes, Asst. Atty. Gen., Jefferson City, for respondent.

KENNETH W. SHRUM, Judge.

Rodney Felder ("Movant") appeals a judgment denying his Rule 29.15 motion for post-conviction relief from his convictions for first degree robbery (§ 569.020), armed criminal action (§ 571.015), and felonious restraint (§ 565.120).[1] Movant charges the motion court erred by not finding his appellate counsel ineffective; specifically, he alleges counsel was ineffective for not challenging, in the direct appeal, the trial court's exclusion of certain testimonial evidence. We find no error in the denial of Movant's Rule 29.15 motion. We affirm.

The following account of facts from Movant's criminal trial is essential to our analysis of Movant's claim of motion court error. Mary Goodwin ("Victim") returned to her home at approximately 8:20 a.m., November 11, 1996, to find an old, long, golden-brown car parked in her driveway. Entering her home, Victim encountered a man with a gun who then tied her up with a phone cord and directed her to remain in her grandson's bedroom while he finished ransacking the residence.[2] Victim could not identify the robber, nor his ethnicity, as he had a shirt over his face and gloves on his hands.

Approximately twenty minutes before Victim was robbed, Candice Hamilton ("Witness") attempted to turn into her parent's driveway, but found her entry blocked by an older, cream or champagne-colored car that was pulling out. At the opening of the driveway, the car stopped. The African–American male driver thereof waved to Witness, and then pulled out heading north in the direction of Victim's home. Witness then pulled up the driveway and into her parents' garage, but noticed the other car proceeding back down the driveway. When the driver motioned for Witness to come to his car, she panicked and went inside her parents' house. Thereon, the other car pulled out of the driveway and once again headed north toward Victim's house, which was three miles down the road. At trial, Witness positively identified Movant as the driver of the car she had encountered.

After the incident at her parents' home, Witness called the Newton County sheriff's department. Later, Witness met with a deputy, gave him a statement, and helped with a composite drawing of the

---

1. All rule references are to Supreme Court Rules (2002), unless otherwise indicated. All statutory references are to RSMo (1994), unless stated otherwise.

2. Taken from the home were two television sets, a videocasette recorder, jewelry, silverware, a wristwatch, solitaire games, and Walt Disney videotapes.

suspect. That evening (November 11), Joplin police officer Michael Hobson ("Hobson") saw the composite drawing and believed the suspect to be Movant.[3] Hobson drove by Movant's address (1212 Furnace) that night, and he saw a cream-colored Chevrolet Monte Carlo parked there.

The next day (November 12), investigator Duane Allen (Newton County) received a report (from a Joplin patrolman) that the car involved in the robbery was at 1719 Pearl (the home of Willie Blunt) in Joplin. Thereon, Allen went to the 1719 Pearl address and took pictures of the car. Items from the robbery were also seen in the car. When Allen and his partner, investigator Dale Geller, showed a picture of the car and a photo line-up to Witness, she positively identified Movant and his car as being on her parents' driveway approximately twenty minutes before Victim was robbed. Two search warrants were then obtained and executed for the residences located at 1212 Furnace and 1719 Pearl.

Several items from the robbery were found at Movant's address (1212 Furnace). When executing the search warrant at Willie Blunt's home (1719 Pearl), items from the robbery were found in the home, as well as in Movant's car and Blunt's car that were both located at the address. Later that day (November 12), Allen and Geller arrested Movant in Joplin and transported him to Newton County. During the trip, Movant confessed in detail to robbing Victim. Movant also told the investigators that he sold some of the stolen property. At trial, Movant's tape-recorded confession was played for the jury.

Movant presented an alibi defense at trial through the testimony of one witness, his neighbor Elizabeth Shields. Shields met Movant on October 4, 1996, when she moved next door to him. According to Shields, she routinely went to Movant's home each morning at around 8:10 a.m. to use his phone. Shields testified Movant was at home the morning of November 11, 1996, as she used his phone at 8:20 a.m. As such, she claimed Movant could not have committed the crime.

Movant was convicted by a jury and sentenced to the department of corrections for first degree robbery (20 years), armed criminal action (8 years), and felonious restraint (5 years) with the terms running concurrently. On direct appeal, the judgment was affirmed by this court per summary order (Supreme Court Rule 30.25(b) (1999)) and memorandum opinion.

Thereon, Movant timely filed a Rule 29.15 motion for postconviction relief. In part, Movant alleged he was denied effective assistance of appellate counsel when counsel did not charge the trial court with reversible error for excluding Shields' testimony "that other black men regularly drove [Movant's] car." After an evidentiary hearing, the motion court denied Movant's motion and ruled, *inter alia*, that Movant's appellate counsel was not ineffective as alleged. The court reasoned that "[s]ince the offered testimony did not attempt to demonstrate that some other man was driving movant's car at the time of the robbery, it had no relevance." It found that the proposed testimony had no purpose other than to cast bare suspicion on someone other than Movant; consequently, the evidence was inadmissible. This appeal followed.

Movant's single point on appeal maintains the motion court's disposition of his claim of ineffective appellate counsel was clearly erroneous. He insists that if the exclusion of Shield's testimony, i.e., that

---

**3.** The city of Joplin is in Jasper County which adjoins Newton County.

"other black men regularly drove Movant's car[,]" had been raised on direct appeal, this court "would have remanded for a new trial, at which there would have been a reasonable probability of [Movant] being acquitted."

To further explain Movant's argument, we quote the following from his brief:

"[Movant] tried to put on the testimony that other black males regularly drove his car. This evidence would have negated the inference raised by the State's evidence that, because [Movant] was seen in his car earlier that morning, and because his car contained some of the items stolen from the victim, he must have been the robber. It also would have reinforced the evidence that the car and much of that property were found at Willie Blunt's house. These items of evidence together would have made it more likely that the jury would have acquitted [Movant].

. . . .

"[T]he evidence that other black men drove [Movant]'s car was relevant to implicate Blunt and to negate the inference that [Movant] was the robber, especially where the victim could not identify him, no clothing matching that worn by the robber was found in his home or car, and no witness . . . saw him near the victim's house."

▆▆▆ Appellate review of a motion court's disposition of a Rule 29.15 motion is limited to deciding "whether the findings and conclusions of the [motion] court are clearly erroneous." Rule 29.15(k). A motion court's findings and conclusions are clearly erroneous only if a full review of the record leaves the appellate court with a definite and firm impression that a mistake has been made. *Franklin v. State,* 24 S.W.3d 686, 689 (Mo.banc 2000), *cert. denied,* 531 U.S. 951, 121 S.Ct. 356, 148 L.Ed.2d 286 (2000).

In determining the effectiveness of appellate counsel, Missouri courts use the test enunciated in *Strickland v. Washington,* 466 U.S. 668, 687–92, 104 S.Ct. 2052, 2064–67, 80 L.Ed.2d 674 (1984). *See Mallett v. State,* 769 S.W.2d 77, 83 (Mo.banc 1989); *State v. Kidd,* 75 S.W.3d 804, 809 (Mo.App.2002); *Salazar v. State,* 66 S.W.3d 755, 759 (Mo.App.2001). The *Strickland* test provides that to prevail on a claim of ineffective assistance of trial counsel, a movant must show: First, that counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances; and, second, that counsel's deficient performance prejudiced the defense. *Strickland* at 687–92, 104 S.Ct. at 2064–67. To demonstrate prejudice because of ineffective assistance of appellate counsel, a movant must show a reasonable probability that, but for counsel's unreasonable failure to raise the issue, movant would have prevailed on his appeal. *Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 764, 145 L.Ed.2d 756 (2000).

Here, Movant implicitly concedes in his brief that his allegation of motion court error turns on the relevancy of Shields' testimony that she had seen other African–American men driving Movant's vehicle. This necessarily follows because if the excluded evidence was irrelevant—as the motion court ruled—Movant cannot show he was prejudiced by his appellate lawyer's failure to brief that issue because briefing such issue on direct appeal would not have resulted in reversal.

▆▆▆ Evidence is admissible if it is both logically and legally relevant. *State v. Crow,* 63 S.W.3d 270, 274[4] (Mo.App. 2001). Evidence is logically relevant if it tends to prove a disputed fact, corroborates other relevant evidence, or relates to an issue central to the case. *State v.*

*Starr,* 998 S.W.2d 61, 67[11] (Mo.App. 1999). For evidence to be legally relevant, its probative value must outweigh its prejudicial effect. *Crow,* 63 S.W.3d at 274[6].

■ In an offer of proof made prior to Shields' at-trial testimony, Shields stated she knew Movant from October 4, 1996, to November 11, 1996. In that relatively short time period, she saw two other African–American males drive Movant's car "once every two weeks," but "really didn't pay attention at the time." At best, she witnessed three occasions where another person drove Movant's car. More importantly, she could not identify Willie Blunt as one of these individuals. During cross-examination, Shields admitted she did not remember what date she used Movant's phone nor could she recall seeing *anyone* use Movant's car on November 11.

There was absolutely no evidence connecting Blunt to Movant's car *on the day of the crime.* The only evidence that connected Blunt to the car at all was the fact that it was parked at his house the day after the crime. Detracting from the probative value of Shields' testimony was the fact that Hobson testified Movant's car was at Movant's home on the night of the robbery. Moreover, Witness positively identified Movant as driving the car approximately twenty minutes before Victim was robbed. Although some of the stolen property was found at Blunt's home, Movant told the police he sold some of the stolen property. At the time of the search of Blunt's home, i.e., the day *after* the crime, *Blunt's car and Movant's car* were both at the residence.

■ It is well settled that "[d]isconnected and remote acts, outside the crime itself cannot be separately proved for [the] purpose [of suggesting the guilt of another]; and evidence which can have no other effect than to cast bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible." *State v. Umfrees,* 433 S.W.2d 284, 288 (Mo.banc 1968) (quoting 22A C.J.S. *Criminal Law* § 662 b). This follows because the actual risk of prejudice and confusion from such evidence substantially outweighs its probative value, and as such, it is not legally relevant. 22A C.J.S. *Criminal Law* § 729. Measured by these standards, Shields' testimony that she had seen two other African American males drive Movant's car "once every two weeks" was irrelevant and inadmissible. The only possible effect of Shields' proposed testimony would have been to confuse the jurors. It would have been wholly conjectural to infer that Blunt borrowed Movant's car on November 11, 1996, when nothing linked Blunt to the car at any time before the robbery, Movant was positively identified as the driver of the car minutes before the robbery, and Movant confessed to the crime and sold some of the property.

■ Even assuming, *arguendo,* that Shields' testimony regarding other drivers was admissible, Movant's claim would still fail. Had the alleged error been preserved for appellate review, and had counsel raised its exclusion as reversible trial court error, Movant still would not have prevailed as he contends. Although the exclusion of admissible testimony is presumed prejudicial, this presumption is rebutted when the error is harmless beyond a reasonable doubt. *State v. Bowlin,* 850 S.W.2d 116, 118[3] (Mo.App.1993). In assessing whether the exclusion of evidence was harmless beyond a reasonable doubt, the facts and circumstances of the particular case must be examined, including the nature of the charge, the evidence presented, and the role the excluded evidence would have played in the defense's theory. *State v. Simonton,* 49 S.W.3d 766, 781[9] (Mo.App.2001). Here, proof of Movant's guilt was overwhelming; he confessed to

the details of the crime, he was seen minutes before the robbery heading toward Victim's home, he was in possession of some of the stolen merchandise, and he admitted to selling the remainder. Although Shields testified with certainty during her direct examination that Movant was at his home on the morning of November 11, she equivocated during cross-examination and conceded she was uncertain about the date. The jury would have been forced to disbelieve *everything* the State produced as evidence and believe the "shaky" alibi. The evidence at issue would not have affected the jury's deliberations.

On this record, we are persuaded that any error stemming from the exclusion of the questioned evidence was harmless beyond a reasonable doubt. Movant was not prejudiced by the failure of appellate counsel to raise as error the exclusion of Shields' proposed testimony because there is no reasonable probability that Movant would have succeeded on appeal had the alleged error been raised. The motion court's findings of fact and conclusions of law are not clearly erroneous.

The judgment is affirmed.

PREWITT, P.J., and RAHMEYER, C.J., concur.